IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARVIN CLINTON,

    Petitioner,

  v.

BRIAN COOK, WARDEN,

    Respondent.

Civil Action No. 2:16-cv-0573
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Chelsey M. Vascura

**ORDER and**
**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, the Court now terminates the stay in this case and reinstates proceedings, and it is **RECOMMENDED** that this action be **DISMISSED.**

## I. Facts and Procedural History

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the state criminal case against Petitioner as follows:

> Marvin D. Clinton is appealing from his conviction for murder with a firearm specification and repeat violent offender specification. His appointed counsel has filed a brief which contains six assignments of error. Clinton has filed a supplemental brief pro se which contains two assignments of error.
>
> The assignments of error in counsel's brief are:
>
> [I.] Appellant was denied a fair trial by the introduction of inflammatory, irrelevant, inherently prejudicial testimony.

[II.] The trial court erred by admitting expert opinion testimony contrary to the Ohio Rules of Evidence.

[III.] R.C. 2929.14(B)(2)(a) and 2941.149 violate the right to trial by jury guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.

[IV.] The trial court committed plain error by sentencing Appellant as a repeat violent offender without making the findings required by R.C. 2929.14(B)(2)(a).

[V.] The judgment of the trial court is not supported by sufficient, credible evidence.

[VI.] The judgment of the trial court is against the manifest weight of the evidence.

Clinton's assignments of error are:

APPELLANT'S RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED HIM UNDER THE UNITED STATES CONSTITUTION'S SIXTH AMENDMENT AND ARTICLE I SEC. 10 OF THE OHIO CONSTITUTION WAS VIOLATED WHEN HIS TRIAL COUNSEL FAILED TO PERFORM IN A MANNER CONSISTENT WITH HIS DUTIES AS COUNSEL.

APPELLANT'S RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED HIM UNDER THE UNITED STATES CONSTITION [sic] SIXTH AMENDMENT AND ARTICLE 1 SEC. 10 OF THE OHIO CONSTITUTION WAS VIOLATED WHEN HIS TRIAL COUNSEL FAILED TO PRESENT A DEFENSE IN SUPPORT OF APPELLANT'S RIGHTS TO A FAIR TRIAL.

There is no dispute that someone shot and killed Kelsey Ray Ellis on December 18, 2010. Clinton denied being the shooter. The primary issue at the jury trial centered on the proof of the identity of the shooter and the jurors were convinced beyond a reasonable doubt that Clinton was the shooter. The jury therefore rendered guilty verdicts as to murder with a firearm specification and as to tampering with evidence.

Because of Clinton's past criminal record, he was also charged with having a weapon under disability ("WUD") and with a repeat

> violent offender specification ("RVO"). The WUD charge and RVO were tried to the judge who presided over the trial in order to avoid the potential of the jury being influenced by Clinton's past criminal record. The judge found Clinton guilty of both and sentenced him in accord with his findings.

*State v. Clinton*, No. 13AP-751, 2014 WL 6436228, at *1 (Ohio App. 10th Dist. Nov. 18, 2014). The appellate court affirmed the judgment of the trial court. *Id*. On May 20, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Clinton*, 142 Ohio St. 3d 1466 (2015). On August 19, 2014, Petitioner filed a petition for post-conviction relief in the state trial court. He asserted that he was denied the effective assistance of counsel because his attorney failed to call defense witnesses, failed to consult with Petitioner regarding the insanity defense, and failed to obtain potential exculpatory DNA evidence from cigarette butts that were found at the scene. (ECF No. 12-1, PAGEID ##337-339). On May 17, 2016, the trial court granted Petitioner's motion for funds for a DNA expert, and appointed a DNA expert. (ECF No. 12-1, PAGEID #507). Apparently, that action remains pending in the state trial court. On March 4, 2015, Petitioner filed a *pro se* application for reopening of the appeal pursuant to Ohio Appellate Rule 26(B). (PAGEID #396). On March 26, 2015, the appellate court denied the Rule 26(B) application. (PAGEID #438). On June 24, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (PAGEID #472).

On June 22, 2016, Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that he was denied the effective assistance of appellate counsel (claim one); and that the evidence was constitutionally insufficient to sustain his convictions (claim two). Petitioner also appears to assert, in habeas corpus claim two, that he was denied the effective assistance of counsel because his attorney failed to object to the admission of inflammatory and irrelevant testimony, failed to call defense witnesses, and failed to present

3

exculpatory DNA evidence. Respondent contends that Petitioner's claims are procedurally defaulted or without merit.

On June 27, 2017, the Court granted Petitioner's request for a stay of proceedings pending completion of Petitioner's post-conviction remedy in the state courts. Order (ECF No. 20.) However, the docket reflects that no further action has occurred since the trial court's approval of funds for the appointment of a defense DNA expert. (ECF No. 23-1, PAGEID #1682). Moreover, all of Petitioner's claims for the denial of the effective assistance of counsel plainly lack merit. A stay of proceedings is not warranted where the Petitioner's unexhausted claims are plainly meritless. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005). Section 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Therefore, the Court terminates the stay and reinstates proceedings in this case.

## II. Standard of Review

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case. The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt") (internal quotation marks, citations, and footnote omitted).

The AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Further, under the AEDPA, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1)

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir.) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)), *cert. denied sub. nom. Coley v. Robinson*, 134 S. Ct. 513 (2013) . The United States Court of Appeals for the Sixth Circuit has summarized these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the

5

> state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405[] (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407 [].

*Id*. at 748–49. The burden of satisfying the AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

### III. Insufficiency of the Evidence

Petitioner asserts that the evidence is constitutionally insufficient to sustain his convictions because, he contends, evidence failed to establish he was engaged in an argument with the victim, there was no gunshot residue in or around his truck, and witnesses from the neighborhood testified that they had never seen him with a gun. (ECF No. 19, PAGEID ##1662-1663.) The state appellate court, however, rejected this claim:

> After careful review of the evidence, we find the evidence sufficient to prove Clinton was the shooter. . . .
>
> When reviewing the sufficiency of the evidence to support a conviction, an appellant court must examine the evidence that, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).
>
> When there is conflicting evidence, "it [is] the function of the jury to weigh the evidence and assess the credibility of the witnesses in arriving at its verdict. Where reasonable minds can reach different conclusions upon conflicting evidence, determination as to what

occurred is a question for the trier of fact. It is not the function of an appellant court to substitute its judgment for that of the factfinder." *Jenks* at 279.

***

Issues of witness credibility and concerning the weight to attach to specific testimony remain primarily within the province of the trier of fact, whose opportunity to make those determinations is superior to that of a reviewing court. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). The question is whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Hancock*, 108 Ohio St.3d 57, 63, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction. *Thompkins* at 387.

A jury may "take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Nivens*, 10th Dist. No. 95APA09–1236 (May 28, 1996). "Furthermore, it is within the province of the jury to make the credibility of witnesses. ('It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness')." (Citations omitted.) *State v. Dillon*, 10th Dist. No. 04Ap–1211, 2005–Ohio–4124, ¶ 15.

The evidence showed that in the early morning hours of December 18, 2010, Kelsey Ray Ellis's Cadillac Escalade collided with a two-toned green truck. The two drivers got out of their vehicles and a heated discussion occurred. The driver of the truck shot Ellis and then drove away. Marvin Clinton was arrested in a two-toned green truck later that morning. Clinton denied being involved in the shooting but the truck he was driving was clearly identified as being the truck which struck Ellis's Escalade, as proved by both an eyewitness and by analysis of the damage to the two vehicles.

Gunshot residue testing indicated that Clinton had recently fired a gun. Testimony from witnesses in the neighborhood where the shooting occurred, testified about Clinton owning a firearm and showing it to them. Clinton even stated he was going to use the gun to rob a drug dealer who lived nearby.

> The green truck which Clinton was driving contained a magazine which was consistent with holding and firing ammunition such as the bullet and projectile which killed Ellis.
>
> The evidence, while not overwhelming, was sufficient to support the jury's conclusion that Clinton was the person driving the truck which was in a collision with Ellis's Escalade. The evidence also indicated that the drivers got into a heated disagreement. Only one person was in the truck. Clinton was consistently the driver of the truck, despite not being the titled owner. Linking this testimony with the evidence that Clinton had recently fired a gun, as evidenced by gunshot residue testing, provided sufficient proof that Clinton had been the driver of the truck and that he shot Ellis after the argument.
>
> There was little evidence that Clinton was not the shooter. A few eyewitnesses claimed they had never known Clinton to possess or use a firearm, but their testimony did not come from knowledge of what happened the night Ellis was shot.

*State v. Clinton*, 2014 WL 6436228, at *2-3.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be evidence sufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In determining whether the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West,* 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). The prosecution is not required to "rule out every hypothesis except that of guilt." *Id.* (quoting J*ackson*, 443 U.S. at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume—even if it does not appear on the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.*

Moreover, federal habeas courts must afford a "double layer" of deference to state court determinations of the sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d

191, 205 (6th Cir. 2009), *cert. denied*, 558 U.S. 1114 (2010), deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Second, and even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir.), *cert. denied*, 562 U.S. 868 (2010). This is a substantial hurdle for a habeas petitioner to overcome, and Petitioner has not done so.

Review of the record does not support Petitioner's arguments. Kimberly Craig, who was Petitioner's friend and knew him from the neighborhood, testified that she knew he carried a gun and had seen him with a gun in the past. Transcript (ECF No. 12-5, PAGEID ##640, 644-45, 661, 667). Zoran McIlroy also knew Petitioner from the neighborhood at that time as "just Marv." (ECF No. 12-6, PAGEID # 679). Petitioner drove a green truck. (*Id.*). McIlroy heard a crash and went outside with Nicole Oxley, the daughter of his former girlfriend. (*Id.*). Petitioner was on his way to pick up Nicole. (PAGEID #680). A "short black guy" got out of the green truck, and began to argue with the man driving a white SUV. (PAGEID ##680-681, 683). The man in the green truck got back into the truck, then got out of the truck and shot the driver of the white SUV. (PAGEID #683-686). When Officer Miller arrived at the scene, McIlroy was attempting to perform CPR on the victim, Kelsey Ellis. (PAGEID ##717-718.) McIlroy told Miller that the two-toned Dodge had headed north. (PAGEID #719). Officer Albert drove through the area to see if he could find the pickup truck. (PAGEID #733). He observed a green truck matching the description with rear end damage. (PAGEID #734). He pulled the truck

9

over, ordered the driver *(i.e.*, Petitioner) out of the car, and took him into custody. (PAGEID ##734-735). Testing revealed the presence of gunshot reside particles on Petitioner's hands. (PAGEID ##850-851). Cheryl Banks, Petitioner's former girlfriend, held the title to the Dodge Ram truck, but she did not buy it, and she had only driven it once. It was Petitioner's truck. (PAGEID ##865-866). Inside of the truck, police found a black nylon gun holster with a pistol magazine for a 9 millimeter Ruger. (PAGEID ##782-783). According to Mark Hardy, the bullet fragment recovered by the coroner from the body of Kelsey Ellis could have been fired either from a .380 auto cartridge or a 9 millimeter Makarov cartridge. (PAGEID #884). The empty 9 millimeter magazine found in the gun holster in Petitioner's truck was capable of feeding either of these types of bullets. (PAGEID #888). James Moyer, Ellis' friend, also testified that he heard the accident and observed the men from the two vehicles arguing. (PAGEID ##900-902, 904-905). He heard the gunshot and saw the truck spinning away down the road. (PAGEID ##905-906). He called 911. (PAGEID #909). He identified Petitioner's truck as the same one he had seen earlier. (PAGEID ##914-915).

Upon review of the record, and for the reasons addressed by the state appellate court, this Court likewise concludes that, when viewed in the light most favorable to the prosecution, the evidence is constitutionally sufficient to sustain Petitioner's convictions.

Petitioner's claim that the evidence is constitutionally insufficient to sustain his convictions lacks merit.

## IV. Ineffective Assistance of Trial Counsel

Petitioner asserts that he was denied the effective assistance of counsel because his trial attorney failed to object to irrelevant testimony and inflammatory evidence, failed to call defense

10

witness, and failed to obtain or present exculpatory DNA evidence. The state appellate court rejected this claim as follows:

> We turn next to Clinton's pro se assignments of error and his claim he was denied the effective assistance of trial counsel.
>
> A counsel's performance "will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard or reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus.
>
> The question is whether counsel acted outside the "wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Appellate courts must be highly deferential in scrutinizing counsel's performance. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight. * * * There are countless ways to provide effective assistance in any given case." *Id*.
>
> The eighth assignment of error, which is Clinton's second pro se assignment of error, attacks the failure of trial counsel to present more defense evidence at the trial. The fundamental problem for defense counsel was Clinton's history of criminal offenses involving violence. The obvious person to be the centerpiece of the defense case was Clinton himself, but putting Clinton on the witness stand would have exposed his past history of shooting people and robbing people to the jury.
>
> No one else who witnessed the events of December 18, 2010 claimed Clinton was not the shooter. There was very little additional evidence trial counsel could potentially present, so counsel could not be deemed ineffective for failing to present it.
>
> The eighth assignment of error is overruled.
>
> The arguments in Clinton's supplemental brief as to his first assignment of error primarily attack trial counsel's failure to object more at trial. Specifically, Clinton points to the failure of counsel to object when a witness said she would not go into Clinton's residence because a cousin had said he had heard Clinton was a sex offender. Ideally counsel would have asked the trial court judge to tell the jury the statement was not proof Clinton was a sex offender, but the family rumor could not have possibly caused the

jury to reach a verdict of guilty of murder. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Id.* To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694.

Defense counsel did not ignore the comment by the witness. Instead, counsel used the comment as a basis for attacking the witness's credibility in general, especially her credibility when she gave testimony which indicated Clinton was the shooter.

In his assignment of error, Clinton also attacks the failure of counsel to object when police officers mentioned the presence of broken glass at the collision scene. However, the presence of broken glass was not significant given the clear testimony of an eyewitness that the truck Clinton was driving was the same truck involved in the collision.

Clinton also attacks the failure of trial counsel to have DNA testing on some cigarette butts found at the scene of the shooting. No one claimed the shooter was smoking that night, so the identity of who had smoked cigarettes at another time was not relevant evidence. Trial counsel was not ineffective for failing to pursue irrelevant evidence.

***

The comment by a witness that she had been told by a cousin that Clinton had a record for a sex offense could have been handled differently by trial counsel and the trial judge, but could not conceivably have affected the verdicts of guilty. Legitimate trial tactics are not a basis for establishing ineffective assistance of counsel for purposes of the Sixth Amendment to the United States Constitution.

*State v. Clinton*, 2014 WL 6436228, at *4-5.

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing

claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming the ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Id.* at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir.), *cert. denied sub. nom. Hale v. Hoffner*, 134 S. Ct. 680 (2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'" *Poole v. MacLaren*, 547 F. App'x 749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted); citing *Strickland*, 466 U.S. at 687), *cert. denied*, 135 S. Ct. 122 (2014). To make such a showing, a petitioner must overcome the "strong [ ] presum[ption]" that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 687. "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland,* 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

Petitioner has failed to establish the denial of the effective assistance of trial counsel under the two-prong *Strickland* test. As discussed by the state appellate court, nothing in the record indicates that the presentation of defense witnesses or DNA evidence would have assisted the defense. Likewise, Petitioner cannot establish prejudice based on the admission of testimony that Petitioner might be a sex offender.

Petitioner's claim of the denial of the effective assistance of trial counsel lacks merit.

## V. Procedural Default

Respondent contends both that Petitioner has procedurally defaulted his claim that he was denied the effective assistance of appellate counsel and that the claim is without merit.

13

Congress has provided that a state prisoner who is in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas . . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)), *cert. denied*, 544 U.S. 928 (2005). One aspect of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits,

14

neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, courts undertake a four-part analysis when a state argues that a federal habeas claim is waived by virtue of a petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, the Court must decide whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a petitioner did not comply with a state procedural rule and that the rule was an adequate and independent state ground, then the petitioner must demonstrate cause for his failure to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *LeRoy v. Marshall*, 757 F.2d 94, 99-100 (6th Cir.), *cert. denied sub. nom. LeRoy v. Morris*, 474 U.S. 831 (1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default.

*Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'"  *Edwards*, 529 U.S. at 452 (quoting *Murray,* 477 U.S. at 479).  Before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted."  *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir.), *cert. denied*, 546 U.S. 1017 (2005).  Or, if the claim is procedurally defaulted, a petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself."  *Edwards*, 529 U.S. at 450–51.  The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman:* "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S. at 732 []. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838 [] (1999), concluding that the latter doctrine was necessary to "'protect the integrity' of the federal exhaustion rule." *Id.* at 848 [] (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer available. *Id.* at 848 []. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id.* at 854 [] (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204 [] (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray*, 477 U.S. at 495–96), *cert. denied sub. nom. Hodges v. Carpenter*, 135 S. Ct. 1545 (2015).

The state appellate court rejected Petitioner's Rule 26(B) application as untimely and without merit:

> [W]e note that the application was not filed within the time allowed by App. R. 26(B).
>
> More importantly, this appellate court fully considered all the issues raised by the assignments of error before us, including the two assignments of error Clinton raised on his own behalf. The new assignment of error submitted in this motion for reopening does not really present new issues. Assigned counsel did not err in his presenting errors for our consideration and Clinton did not err in presenting issues on his own behalf.
>
> Because Clinton does not demonstrate in the least that he was deprived of effective assistance of appellate counsel, the application for reopening is denied.

Memorandum Decision (ECF No. 12-1, PAGEID ##438-439). Petitioner has, therefore, waived his claim for the denial of the effective assistance of appellate counsel based on the untimely filing of his Rule 26(B) application. *See Wilson v. Hurley*, 382 F. App'x 471, 476 (6th Cir.) (citations omitted), *cert. denied*, 562 U.S. 1033 (2010); *Perry v. Warden of Mansfield Correctional Inst.*, No. 5:13-cv-01196, 2015 WL 2097815, at *17 (N.D. Ohio May 5, 2012) (citing *Hoffner v. Bradshaw*, 622 F.3d 487, 504-505 (6th Cir. 2010), *cert. denied*, 563 U.S. 947

17

(2011)). "If the last state court bases its ruling both on the merits and alternatively on a procedural ground, the procedural ground ruling prevails." *Brinkley v. Houk*, 866 F. Supp. 2d 747, 779 (N.D. Ohio Dec. 5, 2011) (citing *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005)).

Further, Petitioner's claim plainly lacks merit. Petitioner has failed to identify, here or in the Ohio Court of Appeals, any potentially meritorious issue that his attorney failed to raise on appeal. Instead, he argues that his attorney performed in a constitutionally ineffective manner by failing to raise certain issues in his appeal to the Ohio Supreme Court. *See* Application for Reopening Pursuant to Appellate Rule 26(B) (ECF No. 12-1, PAGEID ##396-399); Petition (ECF No. 1, PAGEID ##7-8.) However, Petitioner cannot establish the denial of the effective assistance of counsel in the filing of his discretionary appeal to the Ohio Supreme Court, where he had no constitutional right to counsel in those proceedings. "The constitutional right to appointed counsel extends to the first appeal of right and no further." *Wright v. Lazaroff,* 643 F. Supp. 2d 971, 993 (S.D. Ohio 2009) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Coleman v. Thompson*, 501 U.S. 722, 751–53 (1991)). "'There can be a constitutional claim of ineffective assistance of counsel only at a stage of the proceedings when there is a right to counsel under the Sixth Amendment.'" *Id*. (quoting *Smith v. State of Ohio Dept. of Rehabilitation and Corrs.*, 463 F.3d 426, 433 (6th Cir. 2006) (citing *Colem*an, 501 U.S. at 752)).

## VI. Recommended Disposition

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED.**

**PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE